Staples, J.,
delivered the opinion of the court.
It is conceded that the settlement made by Peyton Johnston upon his family, to the extent of the dower interest relinquished by Mrs. Johnston, is valid, and cannot be disturbed.
It is not denied that that settlement was considerably in excess of such dower interest; and the question is, whether it is to be permitted to stand as to such excess against the claims of the then existing creditors of the grantor. The deed as to such excess being voluntary, the ground upon which it is sought to sustain it is, that Peyton Johnston was at the time in prosperous and unembarrassed circumstances; and the provision made for his family was a reasonable one according to his state and condition in life, leaving property amply sufficient for the payment of all his *592 debts, and tbis property would have been available for all the demands of creditors but for the great fire of ■ 1865 in the city of Richmond.
At this day it is unnecessary to consider the question, so long and so ably discussed by former judges of this court, how far a voluntary conveyance without actual fraud is valid against the claims of existing creditors. That question, it is believed, was finally put at rest by the provision incorporated in the revisal of 1849-’50; which declares that every gift, conveyance, &e., which is not upon consideration deemed valuable in law, shall be void as to creditors whose debts shall have been contracted at the time it was made. See section 2, chapter 118, page 565, Code of 1860. This provision excludes all inquiry into the motives and circumstances of the grantor; it adopts the views of Judge Stanard in Hutchinson v. Kelly, 1 Rob. R. 31, and of Chancellor Kent in Reade v. Livingston, 3 John. Ch. R. 481, 500, that if the grantor be indebted at the time of the voluntary settlement, it is presumed to be fraudulent in respect to such debts; and no circumstances will permit those debts to be affected by the settlement, or repel the legal presumption of fraud. The effect of the statute is to disable the debtor from making any voluntary settlement of his estate to stand in the way of his creditors whose debts were contracted at the time. The mischief and inconvenience so much apprehended from the adoption of this rule, even if well-founded, will be to a considerable extent avoided by the statute requiring . the creditor to institute proceedings within five years from the date of the conveyance. See section 13, chapter 149, page 639, Code of 1860.
And this leads us to the consideration of the second ground of error relied upon by the appellant. It is that *593 the present suit was not brought until the year 1871; whereas the deed was executed in 1859. It is insisted that the act of March 8d, 1866, suspending the operation of the statutes of limitation, does not apply to suits against fraudulent donors or their purchasers; but such cases are expressly excepted from the operation of the act in question; that the creditor being free to recover judgment and sue out execution, he was not within the purview and spirit of the suspending statutes.
It is very true that the act of March 3rd, 1866, does in no manner interfere with the rights of creditors againt fraudulent donors and purchasers; and it would seem, therefore, but reasonable that tbe creditor should be held to the exercise of the statutory diligence in instituting proceedings to vacate the deed. But a little reflection is sufficient to show it could not have been the design of the legislature in the enactment of the statutes to suspend the statute of limitations in one class of cases, and leave it in full force as to others equally meritorious. It was very justly provided by these laws that in certain excepted cases the creditor should not be delayed in the collection of his money. These exceptions are enumerated in the second clause of the first section of the act already mentioned. In these cases the creditor was permitted to bring suit and prosecute it to judgment and execution; but it was not incumbent upon him to do so. This remedy was given him as a privilege—a matter of indulgence—and not imposed as a necessity or duty, to be postponed at the peril of being, barred by limitation.
The preamble to the act of March 3rd 1866, in enumerating the reasons for the enactment of the stay law, recites that in consequence of the destruction of *594 the currency, and of all kinds of personal property, stocks and securities, the people were left with but little beside their lands, which, for the want of efficient labor, could not be successfully cultivated in many parts of the country; and in this condition of things forced sales of property would result only in ruinous sacrifice and loss both to creditor and debtor; thus adding to the embarrassment and afflictions under which the country was suffering, blow these considerations were equally applicable to all classes of creditors; to those belonging to the excepted class, as well as to those who did not. And while the fraudulent debtor, or his alienee might not be entitled to any consideration, there was no reason' for forcing the creditor to sue if he preferred to wait for the dawn of a more auspicious period. The country was in a condition extremely unfavorable to deliberate investigation; the public mind unsettled and harrassed with grievous apprehensions of the future; the courts disorganized, and with the exception of a brief period, under control of the military authorities, and in many instances filled with incumbents unknown to the people, and unacquainted with our laws and institutions. Surely the legislature under such circumstances, could hardly have intended to give the fraudulent debtor the benefit of the statutes of limitation, if the creditor delayed his action, and at the same time deny it to the honest debtor. The object was not to encourage but to discourage litigation; to preserve the remedy alike to all who were not inclined, or those unable then to embark in litigation; and therefore it was, the comprehensive language of the 7th section, was adopted. “The period during which this act shall remain in force shall be excluded from the computation of the time within which, by operation of any statute or rule of *595 law, it may be necessary to preserve the loss of any right or remedy.” The legislature could scarcely have used terms more comprehensive. If they do not embrace the case in hand it will be by depriving the words of their plain and natural signification. The language is too positive and unambiguous-to be disregarded by the courts.
The learned counsel for the appellants have, however, raised the question of the constitutionality of the various acts suspending the operation of the statutes of limitation. It is very clear that when the bar of the statute has once attached, the legislature cannot remove the bar by retrospective legislation. It is equally clear that until the bar is complete it is competent for the legislature to extend the period for the institution of actions even as applied to rights already accrued. The various suspending acts adopted during the war were passed by a de facto government, and their validity wfts affirmed by the legislature which assembled after the termination of the war. At the time of the passage of the act of March 3rd, 1866, the plaintiffs’ right of action consequently was not barred by any statute then in force. It was therefore entirely competent for the legislature to extend the period within which the complainants might bring their suit. This doctrine has repeatedly received the sanction of this court, and is now placed beyond the reach of controversy. I think, therefore, the chancery court of Richmond was entirely correct in holding that the claim of the plaintiffs was not barred by limitation.
The remaining ground relied upon by the appellant is, that the chancery court erred in receiving as evidence in this case, the record of the suit of Scott v. McKildoe’s executor to which the appellants were not parties. That suit was instituted by the plaintiffs in *596 this, against Peyton Johnston, the grantor, to obtain a settlement of his accounts as executor of McKildoe’s estate. After a protracted and expensive litigation conducted through a long series of years, every step in the cause being strongly contested, the plaintiffs obtained a decree for a large amount against Peyton Johnston. An appeal was taken to this court, and the decree of the chancery court was reversed in part, and affirmed in part, but still leaving due the plaintiff's a large balance recognized and affirmed by the decree of this court.
The various accounts, settlements, orders and decrees, taken in that case, show that the executor was liable to the complainants for a large amount of money at the time of the execution of the deed, in the year 1859. The record of these proceedings was admitted by the chancellor as prima facie evidence of such liability. The correctness of this decision would seem to be too clear for argument. When the creditor has established his debt by record against the dehtor, such record must, in the absence of all fraud or collusion, be regarded at least as prima facie evidence of the existence and validity of the debt in every controversy in which the debt may be the subject of investigation. This rule is universally acted on in suits involving the rights and priorities of conflicting creditors to the estate of the common debtor. In such cases the judgment or decree is often not only the best, but the sole evidence of the debt. When legatees or distributees have sued the personal representative for an account of assets, when settlements have been made under the supervision of the court, its commissioners and the parties, when every claim or demand asserted on either side has been the subject of earnest investigation, it is difficult to conceive of any proof more satisfactory *597 than that furnished by the proceedings and decree in favor of the complainants. Fortunately, we are not without express authority upon this subject. In Hinde’s lessee v. Longworth, 11 Wheat. R. 199, a similar question was before the supreme court of the United States. Mr. Justice Thompson, in delivering the opinion of the court, said: “It was certainly competent for the defendant to show that the grantor was indebted at the time he made the conveyance; this was a necessary step towards establishing the fraud; and if these judgments conduced to prove the fact, they could not be shut out as incompetent evidence. If the evidence ought to have been excluded because Doyle (the grantee) was not a party to the judgments, the same objection would have lain against the proof of his being in debt to others in any maimer whatever. That would have been equally an inquiry into matters to which the grantee in the deed was not a party. The judgments appear to have been entered some short time after the date of the deed; and it is said that a voluntary deed is void only as to antecedent and not .subsequent creditors, unless made with a fraudulent intent. But copies of the accounts upon which the judgments were founded are spread upon the record; by which it appears that the cause of action arose before the date of the deed. * * * * They may be looked to for the purpose of showing that Doyle (the grantor) was in debt at the date of the deed; but whether to an extent which would avoid the deed, must depend on circumstances which are not to be enquired into by this court. There was no error, therefore, in the admission of the evidence.” The case of McLaughlin v. Bank of Potomac, 7 How. U. S. R. 220, is to the same effect. See also Birely’s *598 ex’ors v. Staley, 5 Gill & John. 433; Alston v. Munford, 1 Brock. R. 279; 2 Rand. 398.
These decisions render any further discussion of the-question wholly unnecessary. They conclusively vindicate the decision of the learned judge of the chancery court upon this branch of the case.
Upon the whole my opinion is, that the decree is correct in every respect, and should be affirmed.
Decree arrirmed.